UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARIEL MERCADO,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>CENTRAL MASS TRANSIT<br>MANAGEMENT, INC.,<br><br>　　　　　　Defendant. | CIVIL ACTION<br><br>NO. 4:18-cv-40101-DHH |

**ORDER**

**December 4, 2018**

Hennessy, M.J.

This matter comes before the Court on Defendant Central Mass Transit Management, Inc.'s ("Defendant" or the "Company") motion to dismiss the complaint of Plaintiff Ariel Mercado. Dkt no. 6. This matter is ripe for adjudication. For the reasons that follow, Defendant's motion to dismiss is GRANTED.

I.　PROCEDURAL BACKGROUND

Plaintiff Ariel Mercado commenced the instant action in Worcester Superior Court on April 25, 2018 upon filing a complaint to compel arbitration. Dkt. no. 4, at pp. 4–8. Defendant was served with a summons and copy of the complaint on May 23, 2018. Id. at 182. On June 12, 2018, Defendant removed the action to this Court. Dkt. no. 1.

On June 19, 2018, Defendant filed a motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. no. 6. Plaintiff opposed Defendant's motion. Dkt. no. 11. On July 13, 2018, in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil

Procedure 73(b), the Parties consented to have the undersigned conduct all further proceedings in this action. Dkt. nos. 10, 15.

II. FACTUAL BACKGROUND

Defendant, a Massachusetts corporation, and Worcester Local 22 of the Amalgamated Transit Union (the "Union") entered into a collective bargaining agreement ("CBA"), effective July 1, 2015 through July 1, 2018. Dkt. no. 4, at p. 4 (Complaint ¶ 5). The CBA governed the employment terms and conditions of all Defendant's non-supervisory employees, including its bus drivers. Id. at 11 (CBA pmbl.). Plaintiff, a resident of Worcester, Massachusetts, was employed by Defendant as a bus driver. Id. at 4 (Complaint ¶ 6). He was also a member of the Union, and the terms and conditions of his employment with Defendant were governed by the CBA. Id. at 3 (Complaint ¶ 1).

On June 23, 2017, Defendant terminated Plaintiff's employment. Id. at 4 (Complaint ¶ 6). Plaintiff challenged this termination by presenting his grievance to Defendant in compliance with Steps 1 and 2 of the CBA's grievance procedure. Id. (Complaint ¶ 7); see also id. at 19–20 (CBA § III.D). Defendant denied Plaintiff's grievance at both steps. Id. at 4 (Complaint ¶ 8). Thereafter, Plaintiff requested the Union to seek arbitration on his behalf. Id. (Complaint ¶ 9). The Union declined to arbitrate Plaintiff's grievance. Id.

On October 20, 2017, Plaintiff, through an attorney, sent Defendant a letter demanding arbitration of his employment termination ("Arbitration Demand"). Id. (Complaint ¶ 10 and Exhibit B: Demand Letter). Defendant denied the Arbitration Demand in a letter response dated October 23, 2018, explaining that Plaintiff lacked standing to seek arbitration pursuant to the terms of the CBA and that the demand was untimely. See id. at 5 (Complaint ¶ 14 and Exhibit

2

C: Demand Response). Plaintiff then filed the instant complaint seeking to compel arbitration. See generally id.

II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must "state a claim that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556). Indeed, "plausible" "means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels [the Court] 'to draw on [its] judicial experience and common sense.'" Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (quoting Iqbal, 556 U.S. at 679).

Despite this generous standard, "Rule 12(b)(6) is not entirely a toothless tiger . . . [t]he threshold for stating a claim may be low, but it is real." Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989) (quotation omitted). The complaint must therefore "allege a factual predicate concrete enough to warrant further proceedings." DM Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999) (emphasis in original). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). Dismissal is appropriate if a plaintiff's well-pleaded facts do not "possess enough heft to show that [the] plaintiff is entitled to

relief." Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

The court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citing Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)). "Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (quoting Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008)). There lies an exception to this rule "for documents the authenticity of which [is] not disputed by the parties; for official public records; for documents central to [a plaintiff's] claim; or for documents sufficiently referred to in the complaint." Rivera, 575 F.3d at 15 (quoting Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)). For example, where a complaint repeatedly references a collective bargaining agreement, the agreement may be considered in deciding a motion to dismiss. See, e.g., Dickey v. Nat'l Football League, 17-cv-12295-IT, 2018 WL 4623061, at *5 (D. Mass. Sept. 26, 2018) ("Because [the plaintiff's] Complaint repeatedly references the CBA, it will be considered in deciding [d]efendants' motions to dismiss.").

III.     ANALYSIS

The federal judiciary has the responsibility to determine whether a party to a collective bargaining agreement is required to arbitrate a particular dispute based on an examination of the contract. Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 296–97 (2010); see also United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960) ("The

Congress, however, has by [§] 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate."). The question of arbitrability is a judicial matter for the court—and not an arbitrator—to decide. Granite Rock, 561 U.S. at 297.

"[A]s a matter of federal policy, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Paul Revere Variable Annuity Ins. Co. v. Kirschhofer, 226 F.3d 15, 19 (1st Cir. 2000) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983)). This policy, however, is "subject to constraints." Paul Revere, 226 F.3d at 25 (quoting Coady v. Ashcraft & Gerel, 223 F.3d 1, 9 (1st Cir. 2000)). "One important constraint is that the federal policy favoring arbitration does not totally displace ordinary rules of contract interpretation." Paul Revere, 226 F.3d at 25. Indeed, it is settled that courts must "interpret collective-bargaining agreements [] according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy." M&G Polymers USA, LLC v. Tackett, 135 S. Ct. 926, 933 (2015). Also relevant is the "long-established principle of law that compulsory arbitration cannot be properly awarded absent a contract between the parties agreeing thereto." Indep. Petroleum Workers of Am., Inc. v. Am. Oil Corp., 324 F.2d 903, 906 (7th Cir. 1963); see also United Steelworkers, 363 U.S. at 582. ("For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit."). In other words, because the "arbitration duty is a creature of the collective-bargaining agreement[,] . . . a party cannot be compelled to arbitrate any matter in the absence of a contractual obligation to do so." Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO, 430 U.S. 243, 250–51 (1977). Therefore, "[a] party who attempts to compel arbitration must show that a valid

5

agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003); see also Ouadani v. TF Final Mile LLC, 876 F.3d 31, 36 (1st Cir. 2017) (quoting InterGen, 344 F.3d at 36).

Here, the issues before the Court turn upon a construction of the CBA and a determination of whether it allows individual employees to compel arbitration proceedings. Therefore, a review of the relevant provisions of the CBA at issue, which is annexed as an exhibit to the complaint, is necessary for the Court's determination of the instant motion.[1] For the reasons herein, the Court concludes that the CBA does not authorize an employee to compel arbitration.

A.   Right to Compel Arbitration

The CBA contains, inter alia, discrete sections denominated "Grievances" and "Arbitrations." See dkt. no. 4, at pp. 19–22 (CBA §§ III and IV). Section III of the CBA sets forth the grievance provisions, which "apply to all disputes arising between the Union and the Company, whether any such dispute occurs as the result of a complaint by an individual member of the Union," the Union itself, or the Company. Id. at 19 (CBA § III.A); see also id. at 21 (CBA § III.E) ("The Company may also process grievances under the grievance procedure."). Subsection D sets forth the Union's and Company's agreed-upon grievance procedure, which comprises three "Steps." Id. at 19–20 (CBA § III.D). Step 1 authorizes "[a]ny regular employee having a grievance[,] or his or her designated representative," to present a grievance in writing to the Company's applicable department manager. Id. The department manager is then required to

---

[1] As noted herein, the Court may consider certain evidence outside of the pleadings—including official public records and other documents central to a plaintiff's claim—without converting a motion to dismiss to one for summary judgment. See Alt. Energy, Inc., 267 F.3d at 33.

discuss the grievance with a Union official and issue a response on the Company's behalf.  Id. at 20.  "If satisfactory settlement is not reached under Step 1," Step 2 permits the employee, or his or her designated representative, to present the grievance in writing to the Company's General Manager.  Id.  Like the department manager in Step 1, the General Manager is then required to issue a written response respecting the grievance.  Id.  Finally, "[i]f satisfactory settlement is not reached under Step 2, the employee, or his or her designated representative, may file [a] notice of intention to arbitrate the grievance" pursuant to Step 3.  Id.

Section IV of the CBA addresses arbitration.  Id. at 21–22 (CBA § IV).  Its provisions make clear that the CBA contemplates that only the Company or the Union may compel the other to arbitrate a grievance.  For instance, the preface to § IV provides:  "In the event that the grievance is not satisfactorily resolved at Step 2, the Union or the Company may, by written notice to the other, request arbitration as set forth in Section III.D."  Id. at 21 (CBA § IV.A) (emphasis added).  Further, § IV memorializes the "Union and the Company[']s]" mutual obligation to agree on an arbitrator; the "Union or the Company[']s]" conditional right to demand arbitration with the American Arbitration Association ("AAA"); and the "Union and the Company[']s]" conditional right to mutually demand arbitration with JAMS ADR Services ("JAMS").  See generally id. (emphasis added).  The provisions further detail "[e]ither party[']s]"[2] right to have arbitration proceedings transcribed, and the joint obligation of

---

[2] In its ordinary use, "either" refers to "being the one and the other of two"; "the one or the other."  Either, MERRIAM-WEBSTER DICTIONARY ONLINE, https://www.merriam-webster.com/dictionary/either (last visited Nov. 27, 2018).  In other words, the term connotes "[o]ne or the other of two people or things," or "[e]ach of two."  Either, OXFORD ENGLISH DICTIONARY ONLINE, https://en.oxforddictionaries.com/definition/either (last visited Nov. 27, 2018).

"[b]oth parties[']"³ to share expenses for transcription.  Id. (CBA § IV.D) (emphasis added).  Moreover, the CBA pronounces the binding effect of arbitration on "the Company and the Union," and states that "[e]ach party" shall bear its own expenses, while expenses "incurred jointly shall be borne equally by the Union and the Company."  Id. (CBA § IV.E, F) (emphasis added).

In addition to the above-referenced provisions, the CBA's Preamble recites that the agreement is "by and between" the Company, "party of the first part," and the Union, "party of the second part."  Id. at 11 (CBA pmbl.).  The agreement further makes transparent the Company and Union's understanding of the latter's role respecting individual employees:  "The Company recognizes the [Union] as the exclusive bargaining agent in respect to rates of pay, wages, hours and other terms and conditions of employment of all employees . . . ."  Id. at 13 (CBA § I.B).

In light of the plain language of §§ III and IV, particularly the absence of the grant of any arbitration rights in § IV to an individual employee, an individual employee cannot unilaterally initiate, compel, and participate in arbitration proceedings.  Plaintiff's three main contentions do not change the clear language and intent of the CBA.

Plaintiff first argues that the "CBA specifically gives [Plaintiff] the authority to demand arbitration of his termination in section III."  Dkt. no. 4, at p. 5 (Complaint ¶ 15).  In other words, Plaintiff contends that "the contractual origin of the right to request arbitration is plainly Section III.D."  Dkt. no. 11, at p. 7.  While Step 3 of the procedure provides a disgruntled employee or her representative the opportunity to "file notice of intention to arbitrate the grievance," this right

---

³ The term "both" ordinarily references "the one as well as the other," or "used for emphasis to refer to two people or things, regarded and identified together."  See Both, MERRIAM-WEBSTER DICTIONARY ONLINE, https://www.merriam-webster.com/dictionary/both (last visited Nov. 27, 2018); see also Both, OXFORD ENGLISH DICTIONARY ONLINE, https://en.oxforddictionaries.com/definition/both (last visited Nov. 27, 2018).

8

does not equate to an authority to demand or compel arbitration. First, the language of Step 3 does not support such authority. Rather, it provides that an employee "may file notice of intention to arbitrate." Dkt. no. 4, at p. 20 (CBA § III.D). That is, the employee may serve the Company and Union with a document that reflects the employee's position that the grievance be arbitrated. Second, § IV, which describes the rights of the Company and the Union with respect to arbitration, fails to even mention the word "employee," let alone expressly or implicitly recognize a right in the employee to arbitrate. "If [an] employer and [a] union deem it consonant with the efficient handling of labor disputes to repose power in the individual employee to compel the employer to arbitrate grievances, then they may do so, by incorporating such a provision in clear language in the collective bargaining agreement." Black-Clawson Co. Paper Mach. Div. v. Int'l Ass'n of Machinists Lodge 335, Dist. 137, 313 F.2d 179, 186 (2d Cir. 1962). The clear language of the CBA confers no authority on an individual employee to compel arbitration, and in any event, the CBA's arbitration provisions are denominated in § IV, not § III. Plaintiff's contractual interpretation thus conflates the right to file a notice of intent with the right to serve a demand for arbitration.

Second, Plaintiff argues that "[i]f only the Union had the right to arbitration, there is no logical reason for an employee to have the right to file an intention to arbitrate." Dkt. no. 11, at p. 8. This argument ignores the fact that there are myriad reasons, at least respecting dispute resolution, to allow an employee the opportunity to make known to both his employer and union his thoughts on his grievance or potential arbitration. For example, a discharged employee's filing of such notice would serve to memorialize his thoughts on his discharge. This communication would place his employer on notice of his beliefs, and could possibly trigger the employer to reevaluate its handling of the employee's grievance (at, say, Step 2 of the grievance

procedure) so as to avoid a potential arbitration demand from the employee's union. Similarly, notice can communicate the employee's position to the Union that the employee is dissatisfied with the result of the grievance procedure. Hence, there is at least some "logical reason for an employee to have the right to file an intention to arbitrate," but not the authority to compel arbitration proceedings.

Lastly, Plaintiff argues that after an employee requests arbitration, "[t]he next step in arbitration is for the parties—<u>presumably</u>, the employee's designated representative who demanded the arbitration of the Union, and the Company—to agree on an arbitrator." <u>Id.</u> (emphasis added). This argument takes unjustified license with the "presumption" that "the parties" includes the employee or her designated representative. As noted above, the CBA's Preamble recites that the parties to the CBA are the Company and the Union. Dkt. no. 4, at p. 11 (CBA pmbl.) And so when § IV refers to "the parties," there is no need to rely on a "presumption" about who is meant. But even if there were any ambiguity, the text of § IV read as a whole refers to, and only to, the Union and the Company: It provides that the "<u>Union or the Company may</u>, by written notice <u>to the other</u>, request arbitration." Dkt. no. 4, at p. 21 (CBA § IV.A) (emphasis added). It confers a mutual obligation on the "Union and the Company" to choose an arbitrator. <u>Id.</u> ("The <u>Union and the Company</u> shall attempt to mutually agree on an arbitrator." (emphasis added)). It provides the Union and the Company with conditional rights to unilaterally demand arbitration with AAA if they cannot agree on an arbitrator, or mutually demand arbitration with JAMS. <u>Id.</u> (CBA § IV.A). These provisions do not "presumably" or otherwise confer upon an employee or its designated representative (other than the Union) any right in the arbitrator selection process.

For these reasons, Plaintiff's arguments are contradicted by the plain terms of the CBA. See Lowenstern v. Residential Credit Sols., 11-11760-MLW, 2013 WL 697108, at *3 (D. Mass. Feb. 25, 2013) ("When [a document] contradict[s] an allegation in the complaint, the document trumps the allegation." (citing Clorox Co. P.R. v. Proctor & Gamble Consumer Co., 228 F.3d 24, 32 (1st Cir. 2000))). Where, as here, a bargaining contract between a union and company confers rights respecting arbitration on those parties only, an individual union-member employee has no contractual right to compel or demand arbitration. See, e.g., Trompeter v. Boise Cascade Corp., 877 F.2d 686, 687 (8th Cir. 1989) (concluding employee has no standing to compel arbitration where bargaining contract confers that right on the union and company only); Black-Clawson, 313 F.2d at 186 (holding individual employee lacks authority to compel arbitration where employee's union is sole agency empowered to do so on behalf of the employee pursuant to the collective bargaining agreement); Procter & Gamble Indep. Union of Port Ivory, N.Y. v. Procter & Gamble Mfg. Co., 312 F.2d 181, 185 (2d Cir. 1962) (concluding that an agreement providing that arbitration may be called for "by either party hereto, the Employer and the Union . . . clearly indicates that only the union or the employer can demand arbitration"). For the "'union's right to screen grievances and to press only those it concludes should be pressed is a valuable right' . . . and inures to the benefit of all employees." Black-Clawson, 313 F.2d at 186 (quoting Ostrofsky v. United Steelworkers of Am., AFL-CIO, 171 F. Supp. 782, 790 (D. Md. 1959)).

Moreover, "the concept that an individual employee can, at will, throw a wrench into the grievance procedure under a collective bargaining agreement is a serious one . . . ." Robbins v. George W. Prescott Pub. Co., Inc., 614 F.2d 3, 5 (1st Cir. 1980); see also Black-Clawson, 313 F.2d at 186 ("Chaos would result if every disenchanted employee . . . could harass both the union

and the employer by processing grievances through the various steps of the grievance procedure and ultimately by bringing an action to compel arbitration in the face of clear contractual provisions intended to channel the enforcement remedy through the union."). The CBA at issue allows only the Union or the Company to initiate arbitration proceedings and, as such, "the employee has no power to do so individually." Robbins, 614 F.2d at 4 (citing Black-Clawson, 313 F.2d at 179). Accordingly, the complaint fails to state a claim upon which arbitration may be compelled.[4]

B.      Standing to Maintain Breach of Contract Claim

Plaintiff raises for the first time in his opposition the argument that, pursuant to § 301 of the Labor Management Relations Act (the "Act"), this Court may hear his breach of contract claim even if the Court declines to compel arbitration. Dkt. no. 11, at pp. 9–10. The predicate for Plaintiff's breach of contract claim is the contention that the Company has repudiated the grievance procedures of the CBA by refusing to participate in the selection of an arbitrator following Plaintiff's Arbitration Demand. Dkt. no. 11, p. 10. In Plaintiff's view, this repudiation allows the Court to hear his claim for breach of contract. Id. This argument depends on a claim, rejected above, that an employee has the right under the CBA to compel arbitration.

Section 301 of the Act allows an employee or his union to sue his employer for failure to comply with a collective bargaining agreement.[5] Hayes v. New England Milwork Distribs., Inc., 602 F.2d 15, 18 (1st Cir. 1979) (citing Hines v. Anchor Motor Freight, 424 U.S. 554, 562

---

[4] Because I find that Plaintiff has no right to compel arbitration, his contentions respecting the timeliness of his Arbitration Demand, arguments not raised by Defendant in its motion to dismiss but to which Plaintiff nonetheless responds, are of no moment.

[5] See 29 U.S.C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.").

(1976)).  However, it is settled that resort to a CBA's grievance procedure and an unsatisfactory grievance outcome do not establish a sufficient predicate for suit pursuant to § 301.  Hayes, 602 F.2d at 18; see also Ramirez-Lebron v. Int'l Shipping Agency, Inc., 593 F.3d 124, 130 (1st Cir. 2010) ("[T]he determination whether an individual employee has standing to seek enforcement of a right . . . granted under the [CBA] turns upon the nature of the right . . . at issue, the test being whether the right . . . sought to be enforced is 'uniquely personal' to the individual plaintiff or whether it is instead possessed by the bargaining unit as a whole." (alterations and omissions in original) (quoting 20 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 55.60, at 279 (4th ed. 2001))).  Indeed, "absent a [plausible] allegation in the complaint either that the employer repudiated the grievance procedures or that the union wrongfully refused to process the employee's grievance through arbitration, the court may not 'usurp those functions which collective-bargaining contracts have properly entrusted to the arbitration tribunal.'"  Hayes, 602 F.2d at 18 (quoting Hines, 424 U.S. at 562)).

Here, Plaintiff's argument is nothing more than a second attempt to read into the CBA an individual right to compel arbitration that simply is not there.  Indeed, the premise of Plainitff's argument is that the Company was contractually required to arbitrate pursuant to his Arbitration Demand, which would require the Court first to conclude that the CBA affords individual employees a right to compel arbitration.  Again, this interpretation of the CBA is not supported by the document's unambiguous terms.  The notion that the Company breached a contractual obligation thus is unfounded.  See Hayes, 602 F.2d at 18.

Accordingly, the complaint contains no plausible allegation that the Company has in any way frustrated the grievance or arbitration processes in refusing to arbitrate Plaintiff's grievance.  Plaintiff's complaint thus fails to state a claim upon which relief may be granted pursuant to §

301of the Act and fails to articulate facts demonstrating Plaintiff's right to maintain an action under the statute. See Hayes, 602 F.2d at 18; see also Ramirez-Lebron, 593 F.3d at 130.

## Conclusion

On this record, Plaintiff cannot compel Defendant's participation in arbitration nor can he maintain a breach of contract claim pursuant to § 301 of the Labor Management Relations Act. This conclusion holds even though the subject of Plaintiff's grievance—his employment discharge—would otherwise be arbitrable vis-à-vis a demand by either the Union or the Company, the only parties authorized by the CBA to demand arbitration. Hence, Defendant's motion to dismiss (dkt. no. 6) is GRANTED.

/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge